UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRESTON HUNTER,

        Plaintiff,

vs.

        Case No.11-cv-11224
        HON. GERSHWIN A. DRAIN

WAYNE COUNTY, *et al.*

        Defendants.

_____/

OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#38]

I.  INTRODUCTION

This lawsuit arises out of Defendants' alleged violations of Plaintiff's federal constitutional rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution. Consequently, Plaintiff states he has a viable claim for damages under 42 U.S.C. § 1983 because the arresting officers used excessive force in arresting him. Plaintiff also alleges he has viable state law claims. This § 1983 officer excessive force case is presently before the Court on Defendants' Fed. R. Civ. P. 56(c) Motion for Summary Judgment. Plaintiff has responded to Defendants' motion.  For the reasons stated below, the Defendants' Motion for Summary Judgment is GRANTED as to the counts contained in the Plaintiff's Complaint. This Opinion and Order sets forth the Court's ruling.

## II.  FACTUAL BACKGROUND

On April 1, 2009, at approximately 11:00 p.m., Plaintiff Preston Hunter was sitting in the driver's seat of a vehicle at a Citgo gas station, located at East Warren Avenue and Cadillac in the City of Detroit.  His passenger had gone inside the gas station.  As he was sitting in the car, plain-clothed officers in unmarked cars boxed in Plaintiff's vehicle.

The Defendants in the case, Sam Milanovich and Brandon Barber, worked for the Wayne County Sheriff's Department and are being sued in their individual and official capacities.  They were both part of the Wayne County Auto Theft Team known as "ACTION."  The word "ACTION" is an acronym for Apprehending Car Thieves In Our Neighborhoods.

Prior to the shooting at the gas station, they had accumulated intelligence about the blue Ford Explorer that Plaintiff occupied.  Both officers testified at their depositions to certain uncontroverted facts that support the actions that they took.  They had received intelligence that the blue Ford Explorer that Plaintiff was driving had been taken in a carjacking/armed robbery on March 30, 2009, and that shots had been fired at that time. This information had been passed on to them by fellow Deputy Kristyn Montgomery.

Deputy Barber also testified that the Explorer was involved in several armed robberies after it was taken in the carjacking, but before the gas station shooting. Additionally, the officers had been negotiating an undercover purchase of the Explorer the day prior to the shooting that ultimately fell through because the sellers believed that they saw a police car and wanted to move the location of the purchase.

This prior surveillance and intelligence information is uncontroverted and the officers believed that the driver was armed and dangerous.

At the Citgo gas station where Plaintiff was shot, some facts from the scene are also uncontroverted. There is no dispute that Plaintiff was sitting in the same blue Ford Explorer that is described above and that the officers were trying to effectuate an arrest. That Lt. Sam Milanovich approached the vehicle with his gun drawn. At that time the Plaintiff tried to flee and leave the scene. In his attempt to leave the scene, the Plaintiff struck both the deputies' cars in front of and behind him in an effort to try and leave the gas station. The blue Ford Explorer was finally stopped in the gas station when it was struck by another officer's car driven by Sgt. J. Vogler.

While the Plaintiff was attempting to flee, Deputies Milanovich and Barber shot at and struck the Plaintiff multiple times hitting him in the chest, abdomen, and arm. They testified they shot to stop the threat. Mr. Hunter, who was in the car and uncuffed, was perceived by the officers as a continuing threat until he was removed from the car and thrown to the ground and handcuffed. A gun holster was found in the car or on his person and he was in possession of a gun that later proved to be stolen. Officer Barber testified that the gun was found under Mr. Hunter when he was placed on the ground.

After the arrest, an EMS vehicle came and took Mr. Hunter to the hospital.

Deputies Milanovich and Barber had their actions investigated by the Detroit Police Department, and it was further reviewed by the Wayne County Prosecutor's Office. The officers' actions were determined to be in lawful self-defense and defense of others and in the apprehension of a fleeing felon. It was found to be a justifiable shooting.

On August 13, 2009, the Plaintiff Preston Hunter, entered guilty pleas to several offenses related to his conduct on April 1, 2009. His guilty pleas were before Wayne County Circuit Judge Daniel Ryan, who Plaintiff was on probation to at the time. He plead

guilty to (1) being a felon in possession of a firearm, (2) resisting and obstructing an officer trying to arrest him, and (3) felonious assault (that is using a car as a weapon to assault Deputy Milanovich).

The Plaintiff also admitted to knowing that he was driving a stolen car.

Lastly, the Court found no facts to support a claim of unconstitutional policies or procedures against the County of Wayne.

Although the Plaintiff has raised factual issues regarding the facts and circumstances of the case, the Court finds that they do not rise to the level of creating genuine issues of material fact that need to be reviewed by a jury.

On March 28, 2011, Plaintiff instituted this action alleging § 1983 Fourth Amendment claims and a state law assault and battery claim against the individual Defendants (Counts I and II) and a deliberate indifference policy and practice constitutional claim against Wayne County (Count III).

Defendants now move to summarily dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 56(c). Defendants claim that Plaintiff's Complaint does not allege genuine issues of material facts that warrant jury review, and the Court agrees.

### III. ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v.*

*St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence

supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

<u>B. Motion for Summary Judgment</u>

<u>1. Reasonableness under 42 U.S.C. § 1983</u>

The Defendants and the Plaintiff both argue that the United States Supreme Court provides, in allegations of excessive force, that the Fourth Amendment standard of "reasonableness" is applicable to determining if the police officers used excessive force. *See* Defs.' Mot. to Dismiss, pg. 16 ¶ I, Plt.'s Res. to Def. Mot. to Dismiss, pg. 18 ¶ C. They disagree on the results of the application of the test.

In both *Tennessee v. Garner*, 471 U.S. 1 (1985) and *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court established the governing constitutional rule regarding excessive force. In *Garner*, the Court held that the reasonableness of using deadly force to subdue a suspect turns on whether the "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." 471 U.S. at 11. And *Graham* held that excessive-force claims generally "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." 490 U.S. at 388.

The relevant inquiry is whether the officers used more force than was reasonably necessary to make the arrest. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Factors to consider are (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting

to flee. *Id.*

The officers contend that the force used in accomplishing Plaintiff's arrest was objectively reasonable and warranted under the circumstances. Officer Milanovich testified that two days prior to the shooting, he and other officers were informed that the vehicle Plaintiff was in, the blue Ford Explorer, had been stolen during an armed robbery or carjacking. *See* Officer Milanovich Testimony, Ex. B, pg. 14-16. Officer Barber also testified that shots were fired during the carjacking/armed robbery. *See* Officer Barber Testimony, Ex. H, pg. 19-20. Moreover, the officers were aware that the suspects who stole the Explorer made a recent, yet unsuccessful attempt to sell the vehicle to undercover officers. Also, the officers were in receipt of information that subsequent to the failed sell of the vehicle, the same stolen Explorer had been involved in several armed robberies. *Id.* at pg. 20-21.

The officers argue that, armed with the prior knowledge of the carjacking with a weapon where shots were fired and the additional armed robberies the Explorer was involved in, coupled with Plaintiff, in his attempt to flee, hitting two Deputy Sheriffs' cars and almost striking Milanovich with the vehicle, given the totality of the circumstances, the Plaintiff precipitated the use of deadly force, and the Officers had reason to believe that the occupant of the vehicle was armed and dangerous.

Plaintiff argues that the force was excessive, when compared to the severity of the crime, because he was shot nine times and was thrown out of the vehicle on the ground as a result of him "sitting quietly in the Explorer at a gas pump and [ ] not doing anything wrong or illegal." Plf.'s Resp. to Def.'s Mot. for Summary Judg., pg. 20. And that it was not until after the officers engaged him that he attempted to leave the area because he feared

for his life.

Applying the legal principles of *Graham* to the instant action, the officers' actions were not excessive and were reasonable under the circumstances. Although Plaintiff would like the Court to believe that Plaintiff was innocently "sitting quietly" in a stolen vehicle, the facts of this case do not support that proposition. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The officers in this case had prior information that the Explorer was stolen in an armed carjacking, where shots were fired. At the time of the altercation with the Plaintiff, the officers did not know if Plaintiff was the perpetrator in the prior carjacking or if he currently had a weapon; the *Plaintiff in fact had a gun in his possession, which he later pled guilty to and was subsequently sentenced to imprisonment for.* In these types of circumstances in which the initial crime committed had a gun involved with shots fired, it is easy to see that the situation the officers then found themselves in – with a stolen car and suspect inside – could quickly become explosive or even deadly.

In fact, the severity of the situation did become explosive when the Plaintiff attempted to flee in the stolen vehicle and used the vehicle to hit the officers' cars behind and in front of him. The severity of the crime became even more egregious when the Plaintiff aimed the vehicle in the direction of Officer Milanovich causing him to jump out of the way to avoid being hit by the vehicle. When radioed by the undercover officer and informed of the whereabouts of the stolen Explorer, Defendant Officers Milanovich and Barber had every reason to suspect that they could be dealing with an armed robber, who

potentially posed an immediate threat to their safety and the safety of others.

Plaintiff's subsequent guilty plea to the underlying charge, which forms the basis for the present § 1983 claim, is relative to the excessive force issue, insofar as Plaintiff's plea constituted an admission of being a felon in possession of a firearm, felonious assault with a motor vehicle, and resisting and obstructing a police officer, severely call in question Plaintiff's version of the events and his claim that Defendants' actions were unreasonable and excessive. Plaintiff's admissions are persuasive evidence relating to the reasonableness the officers displayed given the circumstances. The amount of force used by the Defendants in effectuating the arrest of Plaintiff was objectively reasonable considering the totality of the circumstances the officers were faced with.

### 2. Officers Milanovich and Barber's Qualified Immunity Defense

Defendants Milanovich and Barber argue, in the alternative, that even if this Court denies summary judgment, with respect to the excessive force claim, Defendants are protected by the doctrine of qualified immunity. Qualified immunity is an affirmative defense that shields public officers from liability under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). The Sixth Circuit has adopted the Supreme Court's holding in *Saucier v. Katz*, 533 U.S. 194 (2001), that a ruling upon a governmental actor's assertion of qualified immunity involves two questions: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir 2005) (citing *Saucier*, 533 U.S. at 201). The question of whether an allegedly violated right is clearly established is determined by asking whether "a reasonable official would

understand that what he is doing violates that right." *Gragg v. Kentucky Cabinet for Workforce Development*, 289 F.3d 958, 964 (6th Cir. 2002). Plaintiff bears the burden of demonstrating that the Officers' conduct violated a clearly established right and that they are not entitled to qualified immunity. *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004).

The first inquiry is whether the Defendant's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. In the instant case, as detailed above, taking the facts in the light most favorable to Plaintiff, a genuine issue of material fact does not exist in respect to the objectively reasonable conduct of the Defendants. The Defendants did not violate the Fourth Amendment. But even assuming that a violation occurred, based upon the undisputed facts on the record, the Officers did not violate any clearly established rights of which a reasonable officer would have known. It would not be apparent to a reasonable officer that attempting to stop a fleeing suspect by firing shots at him to stop the threat as he attempted to use a stolen vehicle to run you down would be unlawful. Nor would it be apparent to a reasonable officer that firing his weapon at a suspect who is using his car to attempt to run over a fellow officer would be unlawful. The officers' actions were neither plainly incompetent nor a knowing violation of the law, therefore, both officers are entitled to qualified immunity.

### 3. The *Monell* Claim against Wayne County

In Plaintiff's § 1983 claim against Wayne County, brought pursuant to *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978), Plaintiff alleges the County failed to train its officers consistent with the constitutional rights of citizens and

failed to supervise and/or discipline officers known to have violated a citizen's rights.

A Plaintiff who seeks to impose liability on a local government under § 1983 must prove that action pursuant to official municipal "policy or custom" caused his injury. *Monell*, 436 U.S. at 691. Official municipal "policy or custom" includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Id.* The alleged policy or custom must be the "moving force of the constitutional violation." *Id.* at 694. This requires that the plaintiff (1) identify the policy or custom, (2) connect it to the municipality and (3) show that the execution of that policy or custom caused the plaintiff's injury. *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993).

"Failure to investigate complaints or discipline officers can give rise to § 1983 liability." *Dyer v. Casey*, 72 F.3d 129; [Reported in Full-text format at: 1995 U.S. App. LEXIS 37042] *2 (6th Cir. 1995). To succeed on a claim for failure to supervise or discipline, the plaintiff must prove that: (1) the supervision or discipline was inadequate for the tasks the officer were performing; (2) the inadequacy resulted from the municipality's "deliberate indifference"; and (3) the inadequacy caused the injury. *Ellis v. Cleveland Municipal Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. Of County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Additionally, in the failure to discipline context, a plaintiff must show a "history of widespread abuse that has been ignored by the [municipality]." *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994).

Here, the Plaintiff relies on two premises: (1) Wayne County does not conduct

performance evaluations nor does it regularly review or monitor its officers conduct, and (2) use of force training "*may not* have even been done in years," to support his *Monell* claim. *See* Plf.'s Resp. to Mot. for Summary Judg., pg. 26 (emphasis added). The Plaintiff's unsupported theory that because the Defendant did not perform regular performance evaluations coupled with his equivocal statement that use of force training "may not" have been done, does not demonstrate that the County failed to or had a history of not supervising or disciplining the officers during the time frame that this incident occurred or any time before that. The proofs Plaintiff offers to support this claim are insufficient to present to the jury and the County is entitled to summary judgment.

### 4.State Law Assault and Battery

The remaining claim of Assault and Battery is brought under Michigan law. An assault is an "attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *Grawehy v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009) (internal quotations and citations omitted). A battery is "an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id.* Under Michigan law, "a police officer may use reasonable force when making an arrest. Therefore, the measure of necessary force is that which an ordinary prudent and intelligent person, with knowledge and in the situation of the arresting officer, would have deemed necessary." *Marvin v. City of Taylor*, 509 F.3d 234, 252 (6th Cir. 2007) (internal quotation marks and citations omitted).

Viewing the record in the light most favorable to the Plaintiff, a reasonably prudent and intelligent person could not conclude that the Defendant officers' actions constitute the

torts of assault and battery. The analysis here mirrors that of Plaintiff's § 1983 excessive force claim. The Plaintiff was shot after he used the stolen Explorer to hit two police cars and drove directly at another office during his attempt to flee the scene. Furthermore, the officers' actions in securing the Plaintiff by taking him out of the car after being shot to effectuate the arrest, was not a measure of force, so excessive under the circumstances, that a reasonably prudent officer would not have undertaken it. The officers could not be sure if Plaintiff – while still in the stolen vehicle – had indeed been neutralized, or even if he had a weapon (which it was later discovered that he did have a gun). Therefore, getting Plaintiff out of the vehicle was paramount to the officers' safety and to the safety of those in the area. Therefore, based on the totality of the circumstances, the Plaintiff's state law claim of Assault and Battery must fail.

### 5. Conclusion

For the reasons stated above, Defendant's motion for summary judgment [#38] is GRANTED.

SO ORDERED.

Dated: January 23, 2013        /s/Gershwin A Drain
                               GERSHWIN A. DRAIN
                               United States District Court Judge

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 23, 2013.

                                              s/Tanya Bankston
                                              TANYA BANKSTON
                                              Case Manager for Judge Drain